# THE PEOPLE ex rel. ATTORNEY GENERAL v. H. S. BROWN.

THE Constitution of this State does not fix the term of the office of District Attorney, but merely directs (Art. 6, sec. 7) that the Legislature shall provide for his election by the people, and shall fix by law his duties and compensation.

The Act of 1851, (Wood's Dig. 64) providing for the election of a District Attorney in each county, at the general election of that year, and every two years thereafter, etc., and the Act of 1855, (Wood's Dig. 561, secs. 46 and 49) providing that the Board of Supervisors in each county shall fill vacancies in the office of District Attorney, their appointee to hold until the next general election, the person then elected to hold for the balance of the term of the person whose place he is elected to fill, apply to the city and county of San Francisco, and are not repealed by the ninth, nor by the last section of the Consolidation Act of 1856.

The policy of the Act of 1851 was to create uniformity in the official terms of District Attorneys, by filling those terms at fixed periods.

The object of the ninth section of the Consolidation Act of 1856, was not to repeal the general law of 1855, relative to filling vacancies, but to provide for cases not embraced by the general law—that is, for certain local offices, made elective by the people, peculiar to San Francisco, and for which no provision had been made.

APPEAL from the Twelfth District.

Quo warranto to try the right to the office of District Attorney for the city and county of San Francisco.

The facts appear in the opinion of the Court. The Court below gave judgment in favor of the claimant, Porter, ousting defendant from the office. Defendant appeals.

Alexander Campbell, for Appellant.

Nathan Porter, in pro. per., for Respondent.

BALDWIN, J. delivered the opinion of the Court — COPE, J. concurring.

This is a contest for the office of District Attorney for San Francisco county.

W. K. Osborne was elected to this office at the general election in September, 1857, for the term of two years. He died in March, 1858. The Board of Supervisors appointed Mr. Brown to supply the vacancy.

29

At the general election, (September, 1858) Brown was elected to the office, and at the next general election, (September, 1859) was again elected. At the general election of this year, (November, 1860) Porter, the claimant of the office, was elected.

The case turns on the proper construction of the Consolidation Act, applicable to the city and county of San Francisco, in connection with preëxisting laws touching elections for this office.

The Constitution does not fix the term of this office, but merely (Art. 6, sec. 7) provides that the Legislature shall provide for the election by the people of District Attorneys, and shall fix by law the duties and compensation of these officers. The Act of April, 1851, (Wood's Dig. 64) provides that "there shall be a District Attorney in each county, who shall be elected by the electors of the county, at the general election of the present year, and at the general election every two years thereafter, and shall enter upon his duties on the first Monday of October subsequent to his election." By the Act of 1855, (Wood's Dig. 561, sec. 46) "when any vacancy shall exist in the office of District Attorney, etc., the Board of Supervisors for the county, etc., shall appoint some suitable person to fill the vacancy until the next general election," and by section forty-nine of the same act, it is provided "that whenever an election to fill a vacancy is had, the person chosen shall hold office for the balance of the term of the person whose place he is elected to fill."

It would thus appear that the election of Brown in 1859 was regular, and that the effect of it would be to invest him with the office until 1861, unless some special provision altering the general law exists. This is conceded; but the respondent seeks to show that this provision is found in the Consolidation Act of 1856, amended in 1857. The ninth section of this act (Statutes of 1856, 148) is that mainly relied upon as establishing a new rule in respect to the filling of vacancies, and as operating a repeal of the general law, so far as the city and county of San Francisco is concerned. That section is in these words : " Whenever vacancies occur in any elective office of the said city and county, and provision is not otherwise made, in this or some other act, for filling the same until the next election, the Board of Supervisors shall appoint a person to discharge the duties of such office until the next election, when the vacancy shall be filled by election for the term, excepting vacancies in the office of Dock-Masters, which vacancies shall be filled by appointments by the Governor."

It is plain that the general provision of law before quoted applied as well to the city of San Francisco as to any other county; and that the rule that repeals of statutes by implication are not favored, applies as well to statutes like that of 1851 as to any other. Nor is it seen why the policy indicated by the Act of 1851 is not as applicable to this as to any other county. The policy evidently was to create uniformity in official terms of these officers, by filling those terms at fixed periods. Whether this policy be a wise one or not, it is not for us to decide. The law having provided by this general act for filling the vacancy of this office in a given way, there must appear in the subsequent act a clear intention to repeal this provision. If the language of the last act can have operation without displacing the provisions of the general act, such effect must be accorded. If such a change, affecting the tenure of so many county officers, had been designed, it is probable that language more expressive of this intent would have been employed; the usual mode of legislation in such case would probably have been adopted, as by words declaring the repeal of the general act, so far as San Francisco county was concerned. But if the meaning were as contended, we see no use at all in the words "and provision is not otherwise made in this or some other act, for filling the same until the next general election," for, according to this construction, the provisions of the section include all elective officers, there being no provision in force in "any other act" at all affecting the matter here. But we really see nothing in the language raising even an apparent difficulty as to the construction of the section. It provides, in effect, that where, in the given category, the mode of appointment and the tenure are fixed by "some other act," such "other act" shall govern. Here the mode and the tenure *were* fixed by the Act of 1851. That the phrase "some other act," includes the general law, is certain, as well from the natural import of the terms, as that there was no other statute which had relation to the subject. The object of the ninth section was not to repeal any general law, applying to the county officers in this matter, but to provide for cases not embraced by the general law. By the act, a number of local offices were made elective by the people; it was necessary that provision should be made for filling these offices in case of vacancy. These offices were peculiar to the city and county, and no provision had been made for their regulation by general legislation. To supply this want, the ninth section was inserted in the Act of 1856. The act, in short, is as if it read in this wise : "When-

ever vacancies exist in elective offices, and no provision is made by this or any other act for filling vacancies in such offices, then the Board of Supervisors, etc. But when vacancies occur in elective offices, as to which, in this respect, provision *is* made by law, such provision applies to such last named offices."

The last section of the Consolidation Act (page 175) lends no aid to the adverse construction. It simply provides that "all laws and parts of laws defining the powers and duties of Supervisors or Board of Supervisors are declared inapplicable to the said city and county of San Francisco, except such as are expressly referred to in, and made applicable thereto by, the provisions of this act; also, all laws and parts of laws, so far as they conflict with the provisions of this act."

But the provision "by other act," referred to in the ninth section, does give power to the Board of Supervisors in this very matter.

The authorities referred to by the respondent have no application. We need not comment on them, nor extend this opinion, for the question, as we view it, is too plain for illustration. The appellant shows a clear right, under a statute in full force, not only not repealed, but expressly recognized by the very act which is cited to show a repeal of it.

The other questions need not be noticed.

Judgment reversed and cause remanded.